| DISTRICT COURT, JEFFERSON COUNTY, COLORADO<br>Address of Court:    100 Jefferson County Parkway<br>Golden, CO 80401<br>Phone: 720-772-2500 | DATE FILED: May 7, 2019 12:12 PM<br>FILING ID: 4F01AF9513D04<br>CASE NUMBER: 2019CV30715 |
|---|---|
| **Plaintiffs: KEVIN J. HICKS AND**<br>**TANYA HICKS**<br><br>**v.**<br><br>**Defendant: GREAT NORTHERN INSURANCE COMPANY**. | <br><br><br><br>**▲FOR COURT USE ONLY▲** |
| **ATTORNEYS FOR PLAINTIFF:**<br>Jonathan E. Bukowski, Esq. #45614<br>Larry E. Bache, Esq. #51958<br>Timothy G. Burchard, II, Esq. #48635<br>MERLIN LAW GROUP, P.A.<br>1001 17th Street, Suite 1150<br>Denver, CO 80202<br>Phone: 720-665-9680<br>Fax: 720-665-9681<br>E-Mail: jbukowski@merlinlawgroup.com<br>E-Mail: lbache@merlinlawgroup.com<br>E-Mail: tburchard@merlinlawgroup.com | Case Number:<br><br>Div.:          Ctrm: |
| **COMPLAINT AND JURY DEMAND** ||

**COMES NOW** Plaintiffs, Kevin J. Hicks and Tanya Hicks, by and through their undersigned counsel, and hereby submit this their Complaint against Defendant, Great Northern Insurance Company, and in support of their Complaint, allege and aver as follows:

## NATURE OF THE ACTION

1.    Plaintiffs bring this action seeking economic and non-economic damages arising from Great Norther Insurance Company's breach of contract, bad faith conduct, unreasonable delay, and unreasonable denial in the payment of covered benefits due and owing under Plaintiffs' first-party insurance contract.

Exhibit A

## PARTIES

2. Plaintiffs, Kevin J. Hicks and Tanya Hicks ("Plaintiffs"), are natural persons domiciled in Golden, Colorado.

3. Upon information and belief, Defendant, Great Northern Insurance Company ("Great Northern"), is an insurance company licensed with the State of Colorado with the Division of Insurance engaged in the business of issuing property and casualty insurance policies insuring commercial and other properties in the State of Colorado.

## JURISDICTION AND VENUE

4. This Court has subject matter and personal jurisdiction over the parties to this cause of action.

5. A cause of action exists under Colorado state law for claims regarding the conduct complained of herein.

6. Jurisdiction is proper as to Great Northern pursuant to Colorado Revised Statutes § 13-1-124(1)(a), (b), and (d) because Great Northern conducted the business at issue in this action, committed tortious misconduct and contracted to insure property within the State of Colorado.

7. Venue is proper pursuant to Col.R.Civ.P. 98 because it is the venue in which the cause of action accrued and where the insured property in question is located.

## FACTS COMMON TO ALL COUNTS

8. Plaintiffs are the owners of property located at 1600 Baneberry Lane, Golden, Colorado 80401 (the "Property").

9. The Property is a two-story, wood-framed structure supported by concrete perimeter walls.

Page **2** of **22**

**Exhibit A**

10. The exterior of the Property is clad in a combination of hard-coat stucco and stone veneer.

11. The Property is covered with concrete roofing tiles.

12. Plaintiffs purchased a Policy of insurance from Great Northern Insurance Company under Policy Number 14206815-01 (the "Policy").

13. The Policy is an all risk policy of insurance.

14. The Policy is a replacement cost value policy and covers loss to the Property.

15. The Policy provides coverage for direct physical loss or damage to covered property at the premises caused by or resulting from any covered cause of loss.

16. The Policy provides coverage for alterations to the physical appearance of the Property resulting from hail or wind.

17. The Policy provides coverage for cosmetic damage to the Property resulting from hail or wind.

18. The Policy provides for the repair, rebuild or replacement of the damaged property with other property of like kind and quality.

19. The Policy does not require that the Property sustain functional damage for coverage to be afforded to direct physical loss or damage to covered property at the premises caused by or resulting from any covered cause of loss.

20. The Policy does not require that the water-shedding capabilities of a roofing system be compromised for coverage.

21. The Policy does not require that the long-term service life of a roofing system be compromised for coverage.

**Exhibit A**

22. The Policy does not require that the functionality of a building component be compromised for coverage.

23. The Policy does not include a cosmetic exclusion.

24. The Policy does not provide a cosmetic limiting endorsement.

25. The Policy provides coverage for the reasonable uniform appearance between the repair, rebuild or replacement of the damaged property and the materials existing on the Property.

26. Under the Policy, Great Northern agreed to adjust all losses with Plaintiffs fairly and timely.

27. Plaintiffs paid the premiums due under the Policy in a timely manner.

28. Plaintiffs performed all duties and responsibilities required of them under the Policy.

29. On or about May 8, 2017, during the Policy period, the Property suffered direct physical loss and/or damage resulting from hail and/or wind.

30. The direct physical loss and/or damage resulting from the hail and/or wind constituted a covered loss under the Policy.

31. The direct physical loss and/or damage resulting from the hail and/or wind resulted in functional damage to the Property.

32. The hail and wind storm caused direct physical loss and/or damage to the concrete tile roofing system covering the Property.

33. The direct physical loss and/or damage resulting from the hail and/or wind prevented the concrete tile roofing system covering the Property from continuing to function as a barrier to entrance of the elements to the same extent as it did before the hail damage occurred.

**Exhibit A**

34.     The direct physical loss and/or damage resulting from the hail and/or wind has diminished the long-term service life of the concrete tile roofing system covering the Property.

35.     The hail and wind storm caused direct physical loss and/or damage to the stucco and exterior plaster cladding the Property.

36.     The hail and wind storm caused random distribution of concentric circular fractures to the stucco and exterior plaster cladding the Property.

37.     The hail and wind storm caused crushed cementitious material to the stucco and exterior plaster cladding the Property.

38.     The hail and wind storm caused direct physical loss and/or damage to the windows installed on the Property.

39.     The hail and wind storm caused direct physical loss and/or damage to siding throughout the Property.

40.     The direct physical loss and/or damage resulting from the hail and/or wind was promptly reported to Great Northern.

41.     Great Northern assigned Claim Number 40517032136 to the Property loss.

42.     Great Northern retained Chubb to assist with the investigation and adjustment of Plaintiffs' claim for direct physical loss and/or damage to the Property resulting from the hail and/or wind that occurred on or about May 8, 2017.

43.     Great Northern retained JS Held to generate an estimate to repair the direct physical loss and damage resulting from resulting from the hail and/or wind that occurred on or about May 8, 2017.

44.     Upon reasonable belief and suspicion, JS Held is a preferred vendor of Great Northern Insurance Company.

**Exhibit A**

45.    Chubb performed a site inspection of the Property on June 8, 2017.

46.    JS Held performed an inspection of the Property on June 30, 2017.

47.    On July 24, 2017, JS Held generated an estimate of repairs of the direct physical loss and damage resulting from the hail and wind storm which provided $26,929.65 in replacement cost value benefits and $24,017.36 in actual cash value benefits.

48.    The first JS Held repair estimate did not provide any allowance for repairs of the direct physical loss and damage to the stucco at the Property.

49.    The first JS Held repair estimate did not provide any allowance for necessary repairs to stucco and stone required to repair the direct physical loss and damage to the windows at the Property.

50.    The first JS Held repair estimate did not provide for like kind and quality replacement of the direct physical loss and damage to the windows at the Property.

51.    The first JS Held repair estimate failed to provide the proper repair methodology for damaged finned windows, instead providing a repair methodology utilized for block framed windows.

52.    On July 27, 2017, Great Northern adopted the first JS Held repair estimate and issued payment to Plaintiffs in the amount of $17,929.65.

53.    Great Northern's failure to include the proper allowance for repairs outlined in Paragraphs 49 through 51 resulted in the delay of covered benefits to Plaintiffs without a reasonable basis.

54.    On August 12, 2017, Plaintiffs notified Great Northern of the deficiencies contained within the JS Held repair estimate and inability to perform the work required to return their property to its pre-hail condition.

**Exhibit A**

55.     On August 14, 2017, Great Northern representative, Chubb, responded to Plaintiffs' notification of the deficiencies contained within the first JS Held repair estimate. Instead of addressing Plaintiffs' concerns with JS Held's first repair estimate, Great Northern referred Plaintiffs to four vendors on Vericlaim's vendor preferred list.

56.     Frustrated by Great Northern's refusal to correct the deficiencies contained within the first JS Held repair estimate, Plaintiffs retained a Colorado licensed public adjuster to assist them with the investigation and adjustment of their claim.

57.     On November 30, 2017, Plaintiffs' public adjuster generated an initial estimate of repairs of the direct physical loss and damage resulting from the hail and wind storm which provided $410,965.99 in covered benefits ("Plaintiffs Initial Repair Estimate").

58.     On or about December 1, 2017, Plaintiffs' public adjuster provided a copy of Plaintiffs Initial Repair Estimate and corresponding bids to Great Northern's representative, Mark Little of Chubb.

59.     On December 13, 2017, JS Held and Chubb performed a second of the Property.

60.     On January 12, 2018, JS Held and Chubb performed a third inspection of the Property.

61.     On March 13, 2018, Plaintiffs' public adjuster provided Great Northern with photographs illustrating fractures and cracks to the concrete tiles covering Plaintiffs' Property that were fresh in nature, contain sharp edges, and showed little to no deterioration from long-term exposure.

62.     On March 16, 2018, Plaintiffs' public adjuster generated an initial estimate of repairs of the direct physical loss and damage resulting from the hail and wind storm which provided $577,634.46 in covered benefits ("Plaintiffs Second Repair Estimate").

**Exhibit A**

63.    On or about March 16, 2018, Plaintiffs' public adjuster provided a copy of Plaintiffs Second Repair Estimate and corresponding bids to JS Held and Great Northern's representative, Mark Little of Chubb.

64.    On March 28, 2018, JS Held generated a second estimate of repairs of the direct physical loss and damage resulting from the hail and wind storm which provided $288,022.58 in replacement cost value benefits and $285,510.92 in actual cash value benefits.

65.    On April 3, 2018, Great Northern issued an additional actual cash value benefit payment to Plaintiffs in the amount of $271,316.08.

66.    Great Northern's failure to include $271,316.08 within its first payment that were subsequently provided with its second payment resulted in the delay of covered benefits in the amount of $271,316.08 without a reasonable basis.

67.    On June 22, 2018, Plaintiffs' public adjuster provided Great Northern with correspondence outlining numerous shortfalls contained within the second JS Held repair estimate, including:

- Front Door Entry – pricing not in line with market costs of the large custom doors and formal entry system at the Property;
- Wood Work – inefficient repair methodology to repair direct physical loss and damage to wood beams;
- Handrails – failure to include allowance to detach and reset posts supporting the handrails;
- Handrails – failure to include allowance for direct physical damage to handrails;
- Patio Door On Main Deck – failure to include allowance for direct physical damage to south facing patio door on main deck;
- Non-Vinyl Window – failure to include allowance for direct physical damage to non-vinyl windows;
- Sliding Patio Doors – failure to include allowance for all direct physical damage to sliding patio doors;
- Garage Doors – insufficient repair methodology to repair direct physical loss and damage to garage doors; and
- Concrete Roof Tiles – insufficient repair methodology to repair direct physical loss and damage to concrete roof tiles.

Page **8** of **22**

**Exhibit A**

68.    On June 22, 2018, Plaintiffs public adjuster provided Great Northern with a revised estimate of repairs of the direct physical loss and damage resulting from the hail and wind storm in the amount of $653,781.17.

69.    On September 21, 2018, Plaintiffs public adjuster again identified the deficiencies contained within Great Northern's repair estimate.

70.    Great Northern retained the services of Envista Forensics, an outcome-oriented engineering firm, to perform an inspection of the property.

71.    Great Northern failed to properly instruct Envista to investigate the Property for direct physical loss or damage resulting from hail or wind.

72.    Great Northern's failure to properly instruct Envista resulted in a flawed investigation under an elevated threshold for damage than required under the Policy.

73.    Envista performed inspections of the Property on November 19, 2018 and December 11, 2018.

74.    Envista observed a total of sixty-five right-hand bottom corner fractures to the concrete tile roofing system covering Plaintiff's Property.

75.    Envista observed hailstone impact fractures to vinyl window.

76.    Envista observed hailstone impact damage to stained wood fascia.

77.    Envista observed hailstone impact damages to the garage doors.

78.    Envista observed hailstone impact damages to EIFS.

79.    Envista observed hailstone impact damages to the sliding doors.

80.    Envista overlooked direct physical loss and damage to additional metal clad windows, wood frame windows, hard-coat stucco façade, stone veneer, and balcony railings.

**Exhibit A**

81.    On January 31, 2019, Great Northern issued an additional actual cash value benefit payment to Plaintiffs in the amount of $800.00.

82.    Great Northern's failure to include $800.00 within its first or second payment to Plaintiffs that were subsequently provided to Plaintiffs with its third payment resulted in the delay of covered benefits in the amount of $800.00 without a reasonable basis.

83.    On April 11, 2019, Plaintiffs' public adjuster provided Great Northern with correspondence outlining numerous deficiencies contained within the Envista Report, including:

- Concrete Roofing Tile – photographs illustrating fresh edges and proper spacing between tiles demonstrating damages from a recent hail event;
- Windows – photographs illustrating inconsistencies and damaged insulated glass to windows identified as undamaged by Envista;
- Metal Windows – photographs illustrating direct physical damage to metal windows causing the removal of factory finish;
- Wood Fascia – photographs illustrating direct physical damage in the form of miss and displaced material to stained wood fascia; and
- Handrails – photographs of direct physical damage to handrails in the form of chipping and removal of handrail finish.

84.    Great Northern has continued to deny payment of covered benefits without a reasonable basis and/or with knowledge of the validity of Plaintiffs' claim for unpaid covered damages.

85.    Despite its duty to give equal consideration to all information, Great Northern has ignored documentation illustrating unpaid covered damages to the Property.

86.    Great Northern's course of conduct demonstrates a failure to conduct a full, fair, and thorough investigation of Plaintiffs' claim direct physical loss and damage resulting from the hail and/or wind storm occurring on or about May 8, 2017.

87.    Great Northern's course of conduct demonstrates a failure to treat Plaintiffs' interests with equal regard to its own.

**Exhibit A**

88.     Despite receiving information substantiating a covered loss, Great Northern has not attempted in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiffs' claim where liability has become reasonably clear.

89.     Despite being provided with all information and documents necessary to demonstrate Plaintiffs' claim for direct physical loss of and/or damage to the Property, Great Northern has continued to unreasonably deny covered benefits to Plaintiffs.

90.     Great Northern has failed to reasonably investigate Plaintiffs' claim for direct physical loss of and/or damage to the Property resulting from a hail and/or wind storm occurring on or about May 8, 2017.

91.     Great Northern has ignored evidence of covered hail damage to the Property resulting from the hail and/or wind storm occurring on or about May 8, 2017.

92.     Great Northern's failure to pay the claim in full has resulted in a breach of contract.

93.     Great Northern's failure to pay the claim has resulted, and continues to result, in additional damages to the Property.

94.     Great Northern's failure to pay the claim has resulted in financial hardship to Plaintiffs.

95.     Great Northern's to pay the claim has resulted in an unreasonable delay and denial in covered benefits without a reasonable basis.

96.     It is apparent from Great Northern's conduct that Great Northern has adopted a plan or approach to delay, as much as possible, its handling and payment of Plaintiffs claim.

97.     Great Northern's conduct has resulted in an avoidable harm to Plaintiffs.

98.     Plaintiffs have fulfilled all duties required of them under the Policy after discovery of the loss.

**Exhibit A**

99.    Plaintiffs have performed all conditions precedent and subsequent required under the Policy, or alternatively, has been excused from performance by the acts, representations, and/or conduct of Great Northern.

100.    Most concerning, Great Northern has compelled Plaintiffs to institute litigation to recover amounts due under their insurance Policy by offering substantially less than Plaintiffs' amount of loss.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

101.    Plaintiffs reallege and reaffirm Paragraphs 1-100 as if fully set forth herein.

102.    Plaintiffs purchased an all risk policy requiring Great Northern to pay for any and all fortuitous damages resulting from a loss not expressly excluded or otherwise limited by the Policy.

103.    The Policy between Plaintiffs and Great Northern is a binding contract.

104.    Plaintiffs paid premiums and otherwise performed all conditions precedent to recovery of benefits under their Policy with Great Northern.

105.    Great Northern has denied certain covered damages and continues to delay and deny certain claimed damages.

106.    Great Northern's failure to honor its obligations under the Policy is a breach of contract.

107.    Great Northern's breach of contract has damaged, and continues to damage, Plaintiffs.

108.    Plaintiffs are entitled to all benefits due and owing under the Policy.

**WHEREFORE**, Plaintiffs, Kevin J. Hicks and Tanya Hicks, respectfully request this Court enter judgment against, Defendant, Great Northern Insurance Company, for damages

**Exhibit A**

resulting from its breach of contract, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and such other relief as the Court deems appropriate.

## SECOND CLAIM FOR RELIEF
### (Bad Faith Breach of Insurance Contract)

109.    Plaintiffs reallege and reaffirm Paragraphs 1-108 as if fully set forth herein.

110.    Under the Policy and Colorado law, Great Northern had a duty to act reasonably and in good faith in the handling of Plaintiffs' claim.

111.    Under the Policy and Colorado law, Great Northern had a duty to act with ordinary, reasonable diligence in investigating the claims submitted by Plaintiffs.

112.    Under the Policy and Colorado law, Great Northern had a duty to act with ordinary, reasonable diligence in determining the amounts due and owing under the Policy in question.

113.    Under the Policy and Colorado law, Great Northern had a duty to act with ordinary, reasonable diligence to pay all amounts due and owing pursuant to the Policy in question.

114.    Under the Policy and Colorado law, Great Northern owes Plaintiffs the duty of good faith and fair dealing.

115.    Great Northern has a continuing obligation to act in good faith during the adjustment of the claim.

116.    At all times material hereto, Great Northern had the non-delegable duty to investigate the claim objectively and to not look for ways to deny benefits or attempt to not pay the full amount owed.

117.    At all times materials hereto, Great Northern owed Plaintiffs the duty to give equal consideration to the financial interests of its insured and not to give greater consideration to its own financial interests while investigating and adjusting its insured's claims.

**Exhibit A**

118.    At all times material hereto, Great Northern had an obligation to conduct a thorough, fair, unbiased, and timely investigation of the claim presented to it, and then properly evaluate and timely pay those claims.

119.    Great Northern sold Plaintiffs the Policy at issue, the intent of which was to provide benefits for covered losses that occurred during the Policy period.

120.    Great Northern knew that the Policy was purchased to protect the Property in the event of a loss.

121.    Plaintiffs have cooperated with Great Northern in the processing of their claim for covered benefits resulting from a hail and/or wind storm occurring on or about May 8, 2017.

122.    Plaintiffs have cooperated with Great Northern in the investigation of their claim for covered benefits resulting from a hail and/or wind storm occurring on or about May 8, 2017.

123.    Plaintiffs have not erected any obstacles to Great Northern' ability to investigate Plaintiffs s claim for covered benefits resulting from a hail and/or wind storm occurring on or about May 8, 2017.

124.    Plaintiffs has not erected any obstacles to Great Northern's ability to evaluate Plaintiffs' claim for covered benefits resulting from a hail and/or wind storm occurring on or about May 8, 2017.

125.    Great Northern disregarded the validity of Plaintiffs' claim for direct physical loss and damage resulting from the hail and/or wind storm occurring on or about May 8, 2017.

126.    Great Northern has breached its covenant of good faith and fair dealing that it owes to Plaintiffs by engaging in a pattern of conduct designed to deprive Plaintiffs of their rights and benefits under the Policy. As described in more detail above, Great Northern provided an initial low-ball estimate resulting in the underpayment of over $270,000.00 in actual cash value covered

**Exhibit A**

benefits. Great Northern's initial repair estimate misrepresented the scope of direct physical damage to the Property. When Plaintiffs questioned the validity of Great Northern's low-ball repair estimate, Great Northern attempted to avoid addressing its mistakes by steering Plaintiffs' to Great Northern's preferred vendors. Plaintiffs were forced to incur the unnecessary expense of retaining a public adjuster to assist in the proper investigation and adjustment of their claim. Great Northern failed to properly instruct Envista resulting in a flawed investigation utilizing novel damage thresholds not required by the Policy.

127.    Great Northern's conduct demonstrates an interest in its own profit to the detriment of Plaintiffs.

128.    Great Northern knowingly failed to include numerous covered damages in its repair estimates, including in excess of $270,000.00 in its initial repair estimate.

129.    Great Northern and its agents misrepresented that its repair estimate included all covered damages resulting from hail.

130.    The representations of Great Northern amounted to hundreds of thousands of dollars were material misrepresentations.

131.    Great Northern underpaid Plaintiffs' claim by failing to objectively evaluate Plaintiffs' claim based on all available evidence, and not just evidence which Great Northern believes supports its position.

132.    Great Northern continues to ignore objective evidence of covered direct physical damage presented by Plaintiffs and their representative.

133.    Great Northern decision to underpay the benefits owed to Plaintiffs was intentional and not accidental.

**Exhibit A**

134.   Great Northern breached its duty of good faith and fair dealing by failing to conduct a proper investigation of the loss.

135.   Great Northern breached its duty of good faith and fair dealing by conducting an outcome-oriented investigation of Plaintiffs' loss.

136.   Great Northern breached its duty of good faith and fair dealing by underpaying Plaintiffs' claim without having documented a reasonable investigation based upon all information.

137.   Great Northern breached its duty of good faith and fair dealing by failing to pay for all direct physical loss and/or damaged resulting from a hail and/or wind storm occurring on May 8, 2017.

138.   Among other circumstances, Great Northern has committed unfair settlement practices including, without limitation:

(a)   Great Northern has failed to acknowledge and act reasonably promptly upon communication with respect to claims arising under insurance policies;

(b)   Great Northern has failed to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

(c)   Great Northern refuses to pay claims without conducting a reasonable investigation based upon all available information;

(d)   Great Northern has failed to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear;

(e)   Great Northern has compelled Plaintiffs to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions by such insureds;

(f)   Great Northern has failed to promptly settle claims, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage;

(g)   Great Northern has misrepresented terms and conditions of the Policy in an attempt to influence Plaintiffs to settlement for less than all benefits reasonably afforded under the Policy for the subject loss and damage; and

(h)   Great Northern encourages its claims representatives to engage in unfair claims settlement practices against Plaintiffs, thereby violating applicable laws and regulations of the State of Colorado.

Page **16** of **22**

**Exhibit A**

139. Upon reasonable suspicion and belief, Great Northern improperly set various claims handling goals to reduce the amount paid on claims.

140. Upon reasonable suspicion and belief, Great Northern improperly denied Plaintiffs' claim to reduce overall claims payments.

141. Upon reasonable suspicion and belief, Great Northern improperly denied Plaintiffs' claim to increase profits.

142. Upon reasonable suspicion and belief, Great Northern improperly denied Plaintiffs' claim to maintain its loss ratio.

143. Upon reasonable suspicion and belief, Great Northern improperly denied Plaintiffs' claim to meet department goals.

144. Great Northern's conduct demonstrates that it was repeatedly aimed at benefiting itself to the detriment of Plaintiffs.

145. Great Northern improperly denied Plaintiffs' claim to reduce the average amount paid on overall claims.

146. Great Northern has committed unfair claim settlement practices as alleged in the preceding paragraphs of Plaintiffs' Complaint.

147. Great Northern's conduct constitutes a bad faith breach of the insurance contract.

148. Great Northern has committed such actions with such frequency as to indicate a general business practice.

149. Plaintiffs have suffered and continues to suffer actual damages due to Great Northern's breach of its covenant of good faith and fair dealing. Plaintiffs seeks compensatory damages for Great Northern's breach of contract, including:

**Exhibit A**

(a)    incurred increased costs to repair, restore and/or replace the significant property damage;

(b)    suffered damages as a proximate result of the misconduct alleged; and

(c)    suffered and will continue to suffer other expenses, including loss of pre-judgment interest, attorneys' fees, public adjuster costs and fees, investigatory fees, and other losses.

**WHEREFORE**, Plaintiffs, Kevin J. Hicks and Tanya Hicks, respectfully request this Court enter judgment against Defendant, Great Northern Insurance Company, for damages resulting from bad faith breach of insurance contract, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and such other relief as the Court deems appropriate.

### THIRD CLAIM FOR RELIEF
**(Unreasonable Delay and Denial of Payment of Covered Benefits Pursuant to C.R.S. §§ 10-3-1115 and 10-3-1116)**

150.    Plaintiffs re-allege and reaffirm Paragraphs 1-149 as though fully set forth herein.

151.    Under Colorado Revised Statute § 10-3-1115, an insurer who delays or denies payment to an insured without a reasonable basis for its delay or denial is in breach of the duty of good faith and fair dealing.

152.    Under Colorado Revised Statute § 10-3-1115, an insurer's delay or denial is unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action.

153.    Plaintiffs are a first-party claimant within the meaning of Colorado Revised Statute § 10-3-1115(1)(b)(1).

154.    Great Northern delayed payment of covered benefits without a reasonable basis for its actions.

155.    Great Northern denied payment of covered benefits without a reasonable basis for its actions.

**Exhibit A**

156.    Among other circumstances, Great Northern has unreasonably delayed and denied covered benefits without a reasonable basis for doing so as alleged in the preceding paragraphs of Plaintiffs' Complaint.

157.    Great Northern delayed and denied payment of covered benefits without a reasonable basis for its action by failing to properly investigate its insured's loss.

158.    Great Northern delayed and denied payment of covered benefits without a reasonable basis for its action by issuing a first damage estimate without having documented a reasonable investigation based upon all information.

159.    Great Northern delayed and denied payment of covered benefits without a reasonable basis for its action by providing Plaintiffs with an inadequate settlement offer.

160.    Great Northern delayed and denied payment of covered benefits without a reasonable basis for its action by failing to properly instruct its retained consultants.

161.    Great Northern delayed and denied payment of covered benefits without a reasonable basis for its action by knowingly relying on an investigation utilizing a novel functional damage threshold that is not required for coverage under the Policy.

162.    Great Northern delayed and denied payment of covered benefits without a reasonable basis for its action by failing to properly instruct its consultants.

163.    Great Northern delayed and denied payment of covered benefits without a reasonable basis for its action by misrepresenting the amount of covered damages to the Property resulting from hail.

164.    Great Northern delayed and denied payment of covered benefits without a reasonable basis for its action by omitting obvious covered damages in an effort to effectuate a deceptively low settlement.

**Exhibit A**

165.    Great Northern delayed and denied payment of covered benefits without a reasonable basis for its action by providing an initial repair estimate that failed to include over $270,000.00 in actual cash value covered benefits.

166.    Great Northern delayed and denied payment of covered benefits without a reasonable basis for its action by retaining an outcome-oriented engineering firm.

167.    Great Northern delayed and denied payment of covered benefits without a reasonable basis for its action by retaining an outcome-oriented engineering firm.

168.    Great Northern delayed and denied payment of covered benefits without a reasonable basis for its action by ignoring evidence of direct physical damage to the roofing system covering the Property resulting from hail and/or wind.

169.    Despite clear evidence of covered damages to the Property, Great Northern continued to delay and deny indemnification of its own insured without a reasonable basis for doing.

170.    Great Northern's actions in the adjustment of Plaintiffs' claim demonstrates an unmistakable complete delay of Plaintiffs' benefits without a reasonable basis for its actions.

171.    Great Northern unreasonably denied and delayed payment of covered benefits without a reasonable basis for its action by forcing Plaintiffs to retain their own professionals to help properly adjust the loss.

172.    Despite receipt of Plaintiffs' comprehensive estimate, Great Northern denied and delayed payment of covered benefits without a reasonable basis for doing so.

173.    Great Northern unreasonably delayed and denied Plaintiffs' claim to reduce overall claims payments.

Exhibit A

174.    Great Northern unreasonably delayed and denied Plaintiffs' claim to increase profits.

175.    Great Northern unreasonably delayed and denied Plaintiffs' claim to maintain its loss ratio.

176.    Great Northern unreasonably delayed and denied Plaintiffs' claim to reduce the average amount paid on overall claims.

177.    Great Northern unreasonably delayed and denied Plaintiffs' claim by asserting coverage positions that it knew were without merit.

178.    Great Northern' actions were intended to dissuade Plaintiffs in pursuing benefits due and owing under the terms of the policy in bad faith.

179.    Based upon the foregoing Paragraphs are therefore entitled to two times the covered benefit, attorneys' fees, and costs pursuant to C.R.S. § 10-3-1116, together with pre-judgment interest at the highest rate allowed by law.

**WHEREFORE**, Plaintiffs, Kevin J. Hicks and Tanya Hicks, respectfully requests this Court enter judgment against Defendant, Great Northern Insurance Company, for damages authorized pursuant to Colorado Revised Statute § 10-3-1116, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and other such relief as the Court deems appropriate.

<u>**REQUEST FOR JURY TRIAL**</u>

180.    Plaintiffs request trial by jury with respect to all claims and issues triable to a jury.

Respectfully submitted this 7th day of May 2019.

<u>*s/ Jonathan E. Bukowski*</u>
Larry E. Bache, Jr., Esq.
Colorado Bar No.: 51958
Jonathan E. Bukowski, Esq.
Colorado Bar No.: 45614

Page **21** of **22**

Exhibit A

Timothy G. Burchard, II
Colorado Bar No.: 48635
Merlin Law Group, PA
1001 17th Street, Ste. 1150
Denver, CO 80202
Telephone:  720-665-9680
Facsimile:   720-665-9681
E-Mail: lbache@merlinlawgroup.com
E-Mail: jbukowski@merlinlawgroup.com
E-Mail: tburchard@merlinlawgroup.com

**Exhibit A**